IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN MITCHELL WYATT, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | Civil Action No. H-14-0530 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this *pro se* section 2254 habeas case is respondent's motion for summary judgment. (Docket Entry No. 12.) Respondent filed the motion on June 20, 2014, and served a copy on petitioner at his address of record that same day. Despite expiration of a reasonable time in excess of 120 days, petitioner has failed to file a response to the motion, and the motion is uncontested.

Based on consideration of the motion, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this case for the reasons that follow.

## I. PROCEDURAL BACKGROUND

Petitioner was convicted of unauthorized use of a vehicle, evading arrest with a motor vehicle, possession of cocaine, and aggravated robbery on September 2, 2010. He was sentenced to twenty years' imprisonment for unauthorized use of a vehicle, twenty years'

imprisonment for evading arrest with a motor vehicle, ten years' imprisonment for possession of cocaine, and seventy-five years' imprisonment for aggravated robbery with a deadly weapon. The convictions were affirmed on appeal on May 24, 2011, and discretionary review was refused on November 16, 2011. For purposes of AEDPA limitations, petitioner's convictions became final on February 14, 2012, when time for filing a petition for a writ of certiorari expired. Sup. Ct. R. 13.1. Thus, limitations expired one year later on February 14, 2013, absent tolling. Respondent argues that petitioner's federal habeas claims as to three of his four convictions – unauthorized use of a vehicle, evading arrest with a motor vehicle, and possession of cocaine – are barred by limitations.

Petitioner filed an application for state habeas relief with the trial court on January 31, 2013, challenging only his conviction for aggravated robbery. The application was denied by the Texas Court of Criminal Appeals on February 12, 2014. Petitioner filed the instant federal habeas petition on February 24, 2014, raising various claims for ineffective assistance of counsel, prosecutorial misconduct, and trial court error. Respondent argues that petitioner's federal habeas claims regarding his aggravated robbery conviction are timely but without merit.

## II. FACTUAL BACKGROUND

In affirming petitioner's convictions on appeal, the intermediate state court of appeals made the following statement of facts:

On the evening of September 6, 2008, Charles Bock pulled into the parking lot of a Barnes & Noble store. Bock had just gotten out of his vehicle, a Lexus RX 300, when he turned around and saw appellant standing there with a gun in his right hand. Appellant told Bock to '[p]ut everything on the ground, and everything that's in your hands, put it on the ground.' Bock put his wallet on the ground and kept his keys in his hand. Appellant took the keys from Bock and told him to 'go lay down in the grass' in front of his car. Bock obeyed, and appellant then pulled the pager out of Bock's pocket, got into Bock's Lexus, and drove away.

Four days later, on the night of September 10, 2008, Officer David Ciers of the Houston Police Department was parked in a marked patrol car on the right shoulder of Highway 290, with a handheld laser device clocking vehicles for speed. Officer Ciers clocked appellant in a Lexus going ninety miles per hour. Officer Ciers attempted to initiate a traffic stop; he was unsuccessful, and a high-speed chase ensued.

Deputy Timothy Robinson of the Harris County Sheriff's Office joined the pursuit until it ended when appellant drove into the parking lot of a car wash. Appellant jumped out of the vehicle, and Officer Ciers chased him on foot until appellant jumped over a fence leading to an apartment complex. Canine units from the Sheriff's Department and the Houston Police Department searched for the suspect. A tenant and his wife directed the officers to a specific apartment and indicated that was where they had last seen the suspect.

Meanwhile, Bonnie Boyd, who dated appellant, testified that appellant arrived at her apartment late the night of September 10, 2008, saying, 'They are coming.' He told her he loved her and took her into the bathroom. Appellant further told Boyd that the police were chasing him and that he had 'ditched the car.' Appellant was trying to get rid of the drugs he had—about a hundred dollars' worth of crack cocaine, or about ten rocks—by smoking it in the bathroom. Both appellant and Boyd smoked the cocaine. Appellant took the battery out of Boyd's cell phone so that she could not use it and the police would not hear the phone ring inside the apartment.

Deputy Robinson testified that officers were knocking at both the front and back doors of the apartment to which the neighbors directed. The officers heard muffled voices and continued knocking for several minutes until Bonnie Boyd answered the door, let the officers into the apartment, and consented to

their search of her apartment. Deputy Robinson found appellant in the bedroom under the covers with his clothes and shoes on, sweating profusely, and pretending to be asleep. Boyd gave the officers permission to search the apartment. The officers found a Lexus first aid kit in the bedroom, a crack pipe in the bathroom, and a BB gun in a kitchen drawer. Forensic testing on the crack pipe revealed that it contained cocaine residue.

Appellant pleaded 'not guilty' to the charges of unauthorized use of a motor vehicle, evading arrest or detention with a vehicle, possession of a controlled substance, and aggravated robbery. Each offense was enhanced by two felony convictions to which appellant pleaded 'not true.' After finding appellant guilty of each offense and each enhancement paragraph true, the jury assessed punishment at twenty years' confinement for unauthorized use of a motor vehicle, twenty years' confinement for evading detention, ten years' confinement for possession of a controlled substance, and seventy-five years' confinement for aggravated robbery.

*Wyatt*, at *1–2.

## III. THE APPLICABLE LEGAL STANDARDS

A.    <u>Habeas Review</u>

This petition is governed by the applicable provisions of the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA). 28 U .S.C. § 2254. Under the AEDPA,

federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court

unless the state adjudication was contrary to clearly established federal law as determined by

the Supreme Court, or involved an unreasonable application of clearly established federal law

as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770,

785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).

A state court decision is contrary to federal precedent if it applies a rule that contradicts the

governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

B.    Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is

5

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV. LIMITATIONS

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal habeas corpus petitions are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

> (d)(1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §§ 2244(d)(1)–(2).

As shown above, the AEDPA one-year limitation expired on petitioner's convictions on February 14, 2013. Petitioner did not pursue state habeas relief on his convictions for unauthorized use of a motor vehicle, evading arrest with a motor vehicle, and possession of cocaine. The instant federal petition, filed on February 24, 2014, is untimely by nearly one year as to those three convictions. The record shows that petitioner was aware, or could have been aware through the exercise of due diligence, of the factual predicate underlying his claims at the time they occurred during trial or when appellate counsel filed his brief on

appeal, and petitioner presents nothing to the contrary. Moreover, neither petitioner nor the state court record reveals that petitioner was prevented from timely filing due to an unconstitutional state impediment, or that his claims are based on a newly recognized constitutional right recognized by Supreme Court and made retroactively applicable to cases on collateral review. Consequently, petitioner's federal habeas challenges to his convictions for unauthorized use of a motor vehicle, evading arrest with a motor vehicle, and possession of cocaine are barred by the AEDPA one-year statute of limitations.

A different chronology applies, however, to petitioner's conviction for aggravated robbery. Although limitations expired for this conviction on February 14, 2013, petitioner filed an application for state habeas relief on January 31, 2013, fourteen days prior to expiration of limitations. Consequently, the one-year limitation was tolled during pendency of the state habeas proceedings. The Texas Court of Criminal Appeals denied habeas relief on February 12, 2014, and petitioner's federal petition was due February 26, 2014. Petitioner filed the instant federal petition on February 24, 2014. Petitioner's federal habeas claims regarding his aggravated robbery conviction are not barred by limitations, and will be reviewed.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is

measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment – that is, no actual prejudice is shown. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient

performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner also complains of ineffective assistance of appellate counsel. Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394. Nor will counsel be deficient for failing to press a frivolous point. Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690–91.

Petitioner complains that trial counsel was ineffective regarding the aggravated robbery conviction in the following particulars.

A.    Failure to Investigate

Petitioner complains that trial counsel was provided funds by the trial court to hire a court-appointed private investigator to establish his alibi defense to one of the enhancement convictions, but that counsel failed to hire an investigator. Petitioner further claims that trial counsel failed to ensure that law enforcement officers thoroughly investigated the aggravated robbery charge. In short, petitioner asserts claims for inadequate pretrial preparation.

In responding to petitioner's claims, trial counsel submitted an affidavit to the state trial court on habeas review and testified as follows:

> I discussed with Mr. Wyatt at length the facts of the case and what the State was required to prove under his four indictments. I informed him of what was in the police reports and other discovery I obtained from the State, including a police dashboard camera video of a high-speed chase. Our basic strategy was to try to get Mr. Wyatt convicted of the lesser cases, since they carried a much lower range of punishment. Mr. Wyatt was in agreement with this and in fact may have suggested it to me. Mr. Wyatt's assertions in the Application to the contrary are false. Mr. Wyatt indicated that he was not inclined to testify at his trial, and further, that he would not help me prepare his testimony and would not tell me whether he would testify until after the trial had commenced.
>
> *    *    *    *
>
> Mr. Wyatt frequently refused to listen to important matters I wanted to discuss, preferring to occupy our conferences with discussions on how a free-world lawyer would be better, and how he was intending to file his own pretrial motions.
>
> *    *    *    *

11

Contrary to Mr. Wyatt's assertions in the Application, I did not request funds for an investigator. I was the third lawyer on the case, and I discussed the case with Mr. Wyatt's previous attorney, including the results of any of their efforts at investigation. My recollection is that Mr. Wyatt's previous attorneys had no particular information to give me. I myself undertook investigation of the case, including making aerial maps and photographs of the scene and taking them to the jail, and discussing them with Mr. Wyatt. I also made a personal visit to the scene of the robbery to familiarize myself with the lighting, etc. I filed appropriate discovery motions and requests for notices, and caused the trial court to make a discovery order. I obtained copies of all Mr. Wyatt's prior convictions and discussed them with him. I obtained a copy of and reviewed the video of the high speed chase. I reviewed all offense reports that the State made available and discussed the contents with Mr. Wyatt.

Regarding witnesses, Mr. Wyatt never furnished me with any useful information. For instance, he told me he got the car from a drug dealer named 'Red,' but gave me no other information. The girlfriend in the apartment to which Applicant fled gave a statement to police that incriminated Applicant, and she turned over to police items stolen in robberies and a replica handgun. She testified at the instance of the State during the trial. *As for Mr. Wyatt's assertion that there were alibi witnesses, he never informed me of the existence or identities of any such witnesses.*

*Ex parte Wyatt*, pp. 121–22 (emphasis added).

In denying habeas relief on these issues, the state trial court made the following findings of fact:

10.   The primary case, as indicted with two (2) enhancement paragraphs, ha[d] a punishment range of twenty-five (25) years to ninety-nine (99) years, or life, confinement, plus a possible fine.

11.   It is alleged that the applicant robbed the complainant in the primary case at gun point, took his personal belonging[s] and his vehicle. The applicant later led the police on a high speed chase in the complainant's car, then abandoned the car and fled on foot to his girlfriend's apartment, where together they smoked the applicant's crack cocaine rocks to get rid of the drugs.

12

12.   [Trial counsel] discussed the cases with the applicant at length. They discussed the facts of the cases, what was required for the State to prove the four (4) cases, and general strategies.

13.   [Trial counsel] informed the applicant of the content of the police report, the allegations, and other documents and evidence in the State's files, including a video from the high-speed chase showing the applicant operating the complainant's car.

14.   The basic strategy of the cases was to attempt to secure only convictions in the lesser cases, because of the lower punishment ranges.

15.   The applicant agreed with this strategy. [Trial counsel] believes that the applicant may have suggested this strategy.

16.   The applicant indicated to [trial counsel] that he was not inclined to testify at trial.

17.   The applicant indicated to [trial counsel] that he would not help [trial counsel] prepare his testimony and would not tell [trial counsel] whether he would testify or not until trial had commenced.

\*   \*   \*   \*

23.   [In a pretrial letter to applicant, trial counsel] asked the applicant for information to prepare for trial, such as the names and addresses of both fact and character witnesses, in order to subpoena these individuals to testify for the defense.

\*   \*   \*   \*

28.   The applicant frequently refused to listen to [trial counsel] on important matters that [trial counsel] believed [were] necessary to discuss with the applicant. The applicant indicated multiple times that a 'free world' lawyer would do better than [trial counsel], and that the applicant intended to file pretrial motions himself.

29.   The applicant had been to prison on five (5) separate times on nine (9) felony convictions.

30. Contrary to the applicant's assertions, [trial counsel] did not [make a] request for funds for an investigator. An attorney appointed to the cases prior to [trial counsel's] appointment had done so. [Trial counsel] discussed the cases with the applicant['s] previous attorneys, including the results of their investigations. [Trial counsel] recalls that he did not learn much from these attorneys. [Trial counsel] then investigated the case himself. [His] investigative efforts included reviewing and taking notes of the State's files, making aerial maps and photographs of the scene, discussing these maps and photographs with the applicant, making jail visit[s] and discussing the cases with the applicant, visiting the scene of the aggravated robbery and noting the lighting of the surroundings.

31. [Trial counsel] filed pretrial motions and requested that the State provide notices to the defense.

32. [Trial counsel] obtained copies of the applicant's prior convictions and discussed them with him.

33. [Trial counsel] obtained a copy of the video showing the high-speed chase with the applicant operating the complainant's car and eluding the police, reviewed it, and discussed it with the applicant.

34. [Trial counsel] reviewed the State's files thoroughly and discussed the contents of these files with the applicant.

35. The applicant never provided [trial counsel] with useful information on possible witnesses for the defense. The applicant indicated to [trial counsel] at one point that he obtained the car from a drug dealer known as 'Red,' but did not give [trial counsel] any other information to locate this individual. The applicant's girlfriend testified for the State. *The applicant did not provide [trial counsel] with any information on any alibi witnesses for the extraneous offense.*

\* \* \* \*

42. The applicant was able to discuss the cases with [trial counsel] at length, and had all his questions answered.

14

43.  [Trial counsel] conducted a thorough investigation of the primary case.

44.  The applicant did not provide any useful information to [trial counsel] for [him] to subpoena any witnesses to testify at trial.

*    *    *    *

49.  [Trial counsel's] representation of the applicant was not deficient as the applicant fails to demonstrate that [trial counsel's] conduct fell below an objective reasonableness, and that there was a substantial likelihood that he would have been found not guilty, or that he would have received a lesser sentence in the primary case, but for [counsel's] conduct.

50.  [Trial counsel's] representation of the applicant was effective.

51.  The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of counsel at trial.

*Ex parte Wyatt*, pp. 145–151 (emphasis added). The trial court also concluded that trial counsel's representation was effective and that petitioner had been afforded reasonably effective assistance of counsel. *Id.*, p. 151. The Texas Court of Criminal Appeals relied on these findings and conclusions in denying habeas relief. *Id.*, at cover.

An attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance. *Bryant v. Scott*, 28 F.3d 1411, 1435 (5th Cir. 1994). However, in order to establish that counsel was rendered ineffective by virtue of a failure to investigate the case or to discover and present evidence, a convicted defendant must do more than merely allege a failure to investigate; he must state with particularity what the investigation would have revealed, what material evidence would have

15

resulted from that investigation, and how such would have altered the outcome of the case. *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993). Petitioner fails to meet this burden. Moreover, petitioner fails to offer any specific facts supporting his contention that trial counsel failed to interview an available and favorable alibi witness. Petitioner fails to establish a reasonable probability that, but for his attorney's actions or inactions, the outcome of the proceedings would have been different. Petitioner's claims of ineffective assistance of counsel are wholly conclusory, and do not raise a viable constitutional issue for purposes of a federal habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

B.    Failure to Convey a Plea Offer

Petitioner complains that trial counsel failed to convey a plea bargain offer to him that was lower than the sentence he received. Petitioner states that, had counsel informed him of the offer, he would have accepted it.

In responding to this claim on state collateral review, trial counsel testified by affidavit as follows:

Mr. Wyatt was charged with four separate felony cases arising from the same course of conduct: [a]ggravated [r]obbery (carjacking), evading arrest (high speed chase), possession of controlled substance, and unauthorized use of vehicle. It was alleged that Mr. Wyatt did a carjacking, and when approached was driving the stolen car, with which he led the police on a high speed chase at night, ultimately bailing out of the car, going into his girlfriend's apartment, where he barricaded himself in the bathroom to smoke his last rock of crack.

\* \* \* \*

We discussed plea bargain offers and I told him what was necessary to prepare for trial. I informed Mr. Wyatt that because of his numerous prior felony incarcerations, his range of punishment on the aggravated robbery case was 25 years to life. Mr. Wyatt had been to prison five separate times on nine felony convictions. On March 16, 2010[,] the prosecutor, Mr. Ryan Patrick, offered Mr. Wyatt 30 years aggravated on the aggravated robbery indictment, and to dismiss the other three indictments. I conveyed this information that day to Mr. Wyatt in court. In addition to oral discussions, I put my advice in writing to Mr. Wyatt before the trial. A copy is attached as Exhibit A. Mr. Wyatt indicated to me that he would take state jail time on one of his other indictments, but the State never made this plea bargain offer.

\* \* \* \*

I relayed all plea offers to Mr. Wyatt at or near the time they were offered. As detailed above, Mr. Wyatt rejected all the State's offers and demanded a trial. Mr. Wyatt's statements in the Application that I failed to relay offers, and that he would have accepted the offer I failed to relay, are false. In fact Mr. Wyatt made counter-offers such as state jail time or non-aggravated prison time, which the State's attorneys rejected.

*Ex parte Wyatt*, pp. 120–122.

In rejecting petitioner's claim that counsel failed to convey plea bargain offers, the state trial court on collateral review made the following findings of fact:

17

7.  The Court finds that the affidavit of [trial counsel] filed in this instant proceeding is credible, and the facts asserted therein are true and correct.

8.  The trial court appointed [trial counsel] to represent the applicant.

9.  Two (2) other attorneys were appointed by the trial court to represent the applicant before the court appointed [trial counsel]. Both of [trial counsel's] predecessors withdrew from the cases.

*   *   *   *

18. [Trial counsel] relayed all plea bargain offers to the applicant, and discussed each of these offers with him.

19. On March 16, 2010, after [trial counsel's] zealous negotiations with the prosecutor on the cases, the State offered the applicant thirty (30) years confinement in the primary case, and agreed that as part of the plea bargain, to dismiss the three (3) other pending cases. [Trial counsel] relayed this offer to the applicant. The applicant rejected the State's offer and indicated that he would take state jail time on one of the lesser cases, or he would take 'non-agg time.' The State did not make such offers.

20. [Trial counsel] sent the applicant a letter, dated March 18, 2010, summarizing their prior discussions of the cases, and advising the applicant of the options and consequences.

21. In this letter, [trial counsel] explained to the applicant of the range of punishment in the primary case, relayed the offer from the State again, and explained 'agg time' to the applicant. [Trial counsel] also explain[ed] the punishment range of the other pending cases, and relayed to the applicant that the State's offer included dismissal on these three (3) cases.

*   *   *   *

27. The applicant rejected the State's offer of thirty (30) years confinement in the primary case and elected to proceed forward with a jury trial.

\* \* \* \*

45. [Trial counsel] conveyed all plea bargain offers from the State to the applicant.

*Ex parte Wyatt*, pp. 145–147, 150. The trial court also made conclusions of law, in which the court determined that petitioner had been afforded reasonably effective trial counsel and that petitioner had failed to meet his burden of proving ineffective assistance of trial counsel. *Id.*, p. 151–55. The Texas Court of Criminal Appeals relied on these findings and conclusions in denying habeas relief. *Id.*, at cover.

Petitioner presents no probative evidence that trial counsel failed to convey the State's plea bargain offers to him, and his conclusory allegations of such failure, unsupported in the record, are insufficient to preclude the granting of summary judgment against him on this issue. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

C.    Failure to Argue Insufficiency of the Evidence

Petitioner asserts that trial counsel was ineffective for failing to argue effectively to the jury that the evidence was insufficient to sustain a deadly weapon finding.

The state trial court rejected petitioner's underlying claim regarding the evidence, as follows:

> 36. There was evidence that the deadly weapon was used, and the Fourteenth Court of Appeals held that a rational jury could have found beyond a reasonable doubt that the gun used in the robbery was a firearm.

*Ex parte Wyatt*, p. 149; *Wyatt*, at *7. The trial court also made conclusions of law, in which the court determined that petitioner had been afforded reasonably effective trial counsel and that petitioner had failed to meet his burden of proving ineffective assistance of trial counsel. *Id.*, p. 151–55. The Texas Court of Criminal Appeals relied on these findings and conclusions in denying habeas relief. *Id.*, at cover.

Petitioner argues incorrectly that the evidence showed his use of a BB gun during the robbery. To the contrary, no gun or other weapon was recovered from the scene of the crime, and no witness testified that a BB gun was used. Although a BB gun was found in petitioner's girlfriend's apartment at the time of petitioner's arrest, she stated that it belonged to her, and there was no evidence that it was the weapon used during the offense. The complainant, a former Marine, testified that the gun petitioner pointed at him during the offense appeared similar to a Glock-type gun. Both the state trial court and the intermediate state court of appeals addressed and soundly rejected petitioner's sufficiency challenges to the deadly weapon and firearm elements of the conviction. Because the state courts found the evidence sufficient, counsel was not ineffective in failing to argue to the jury that the

evidence was insufficient. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). Petitioner's conclusory and factually erroneous allegations are unsupported in, and refuted by, the record and are insufficient to preclude the granting of summary judgment against him.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

D.    Failure to Request a Special Jury Issue

Petitioner next claims that trial counsel should have requested a special jury issue as to whether the evidence supported a finding that he used a deadly weapon. The state court record shows that the jury was given the definition of "deadly weapon" in the jury instructions. In finding petitioner guilty of aggravated robbery rather than the lesser-included offense of robbery, the jury necessarily found that a deadly weapon had been used in the commission of the charged offense. Consequently, petitioner fails to establish either deficient performance or actual prejudice, and ineffective assistance of trial counsel is not shown.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

E.    Failure to Object

Petitioner claims that trial counsel was ineffective in failing to object to: (i) the amending of the indictment, (ii) a statement made during opening argument regarding his criminal history, (iii) a comment on his post-arrest silence, (iv) the State's closing argument at punishment, and (v) use of extraneous offense evidence at punishment.

In his affidavit submitted to the state trial court on collateral review, trial counsel testified, in relevant part, as follows:

> Mr. Wyatt complains that I was ineffective for not objecting to the State's argument that he used a 'gun, a firearm' to commit the robbery.    The complainant testified that he saw Mr. Wyatt threaten him with a firearm. There was no evidence to the contrary.
>
> Mr. Wyatt also complains that I did not object to argument that there was 'no protesting at the scene' that 'I just borrowed that car.'    This statement might have been construed as a comment on post-arrest silence of the type condemned in [state law]; but not objecting comports with the strategy Mr. Wyatt and I agreed upon, namely, to have him convicted of UUMV rather than aggravated robbery.    It was not a comment on Mr. Wyatt's election not to testify at trial which would have violated the Fifth Amendment.

*Ex parte Wyatt*, p. 122 (citation omitted).

In rejecting petitioner's assertions of ineffective assistance, the trial court made the following relevant findings of fact on collateral review:

> 37.    [Trial counsel] did not object to the prosecutor's statement that the applicant 'did not protest at the scene' or indicate that he merely 'borrowed the car' because refraining from objecting comport[ed] with their trial strategy to have the applicant convicted of the lesser charges, i.e. unauthorized use of motor vehicle, instead of the aggravated robbery.    Further, such comments were *not* directed at the applicant's

22

election not to testify at trial and therefore did not violate the 5th Amendment.

*    *    *    *

46.    [Trial counsel's] forbearance to object to the State's closing argument was not deficient conduct as it comported with trial strategy.

47.    [Trial counsel's] forbearance otherwise during trial was not deficient conduct as the applicant fails to establish that [trial counsel's] forbearance fell below an objective standard of reasonableness, and that there was a substantial likelihood that the outcome of the case would have been different but for [counsel's] forbearance.

*Ex parte Wyatt*, pp. 149–150 (original emphasis; ellipses omitted). The trial court also concluded that trial counsel's representation was effective and that petitioner had been afforded reasonably effective assistance of counsel. *Id.*, p. 151. The Texas Court of Criminal Appeals relied on these findings and conclusions in denying habeas relief. *Id.*, at cover.

Petitioner's conclusory allegations and arguments regarding trial counsel's failures to object are inadequate in light of the state court's findings regarding reasonable trial strategy, and petitioner fails to rebut the strong presumption of reasonable trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996); *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992).

Moreover, counsel is not required to raise groundless objections or file meritless motions. *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007); *Koch*, 907 F.2d at 527. Petitioner fails to establish that, had counsel raised the objections, it would have constituted

reversible error for the trial court to overrule the objections. Moreover, he fails to show that, but for counsel's failures to object, there is a reasonable probability that the result of the proceeding would have been different. Petitioner establishes neither deficient performance nor actual prejudice, and no ineffective assistance of trial counsel is shown.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

F.    Failure to Move for New Trial

Petitioner claims that trial counsel was ineffective in failing to file a motion for new trial prior to requesting leave to withdraw from the case.

In rejecting this claim on collateral review, the state trial court made the following finding of fact:

48.    [Trial counsel] was not deficient for not filing a motion for new trial, as the applicant cannot show that he was harmed by the lack of such motion, because he could not have made any claims in his motion for new trial which he may not now bring in the instant habeas proceeding.

*Ex parte Wyatt*, p. 150. The trial court also concluded that trial counsel's representation was effective and that petitioner had been afforded reasonably effective assistance of counsel.

*Id.*, p. 151. The Texas Court of Criminal Appeals relied on these findings and conclusions in denying habeas relief. *Id.*, at cover.

Petitioner's conclusory allegations of ineffective assistance are unsupported by the record or by probative evidence, and are insufficient to preclude the granting of summary judgment against him. *See Koch*, 907 F.2d at 530. Petitioner establishes neither deficient performance nor actual prejudice under *Strickland*.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

G.     Failure to Question Witness Regarding Fingerprints

Petitioner complains that trial counsel failed to question one or more witnesses regarding the absence of his fingerprints in the stolen vehicle.

Petitioner fails to point to anything in the state court record showing that police investigators tested for, but did not find, his fingerprints in the stolen vehicle, and his conclusory allegations afford him no basis for relief. Regardless, in light of the State's video showing petitioner operating the stolen vehicle during the high-speed chase, petitioner cannot show that any absence of his fingerprints in the vehicle would, in reasonable probability, have lead to a different result in his trial. Petitioner establishes neither deficient performance nor actual prejudice.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

H.    Failure to Contest Photo Lineup

Petitioner complains that trial counsel failed to file a motion or object to the photo spread "line-up" as impermissibly suggestive.

The complainant testified that he saw his assailant's face for "a few seconds" before the assailant ordered him to get on the ground. R.R. Vol. 3, p. 35. During cross examination by defense counsel, the complainant discussed his identification of petitioner from the photo array. *Id.*, pp. 37–40. He stated there had been two rows of photos, three photos per row, and that he was able to rule out the bottom row of males due to size or hair differences. He further stated that he was able to chose petitioner's photograph from the remaining three rather quickly. *Id.*

The photo spread of six black males appears in the record as State's Exhibit No. 2 (Docket Entry No. 8-28, p. 3). According to petitioner, the photo spread was objectionable and impermissibly suggestive because the six photos were not substantially similar – one person looked heavier than petitioner, another thinner, and one person had facial hair, which petitioner did not have. Petitioner states that, had trial counsel objected to the array and ensuing out-of-court identification, the identification would have been suppressed. The

26

complainant's testimony, however, shows that he quickly discounted those three photographs and chose petitioner from the remaining three. Further, the photo array procedure was administered by Harris County Deputy Investigator Ronald Fleming, whose videotaped deposition was presented in evidence to the jury. Fleming testified that, when the complainant chose petitioner's photo from the array, the complainant stated he was "100 percent positive" that the photo he chose was his assailant. R.R. Vol. 6, Exhibit 8, p. 16. Fleming further testified that, in looking for "five other photographs of similar characteristics of the defendant in this case," he chose photos of "[b]lack male[s] of approximately the same age with either balding or short faded haircut. *Id*., p. 17.

"[A] conviction based on an eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990). Although petitioner claims that two of the individuals in the array were heavier or thinner than petitioner and one had facial hair, the complainant testified at trial that it was "unclear" to him whether the individual in the subject photo had facial hair. R.R. Vol. 3, p. 39. Petitioner neither argues nor establishes that the identification procedure with six photographs, two of which showed individuals heavier or thinner than petitioner, gave rise to a substantial likelihood of his misidentification under the circumstances of this case. Petitioner fails to demonstrate that, had trial counsel

objected to the photo array, it would have constituted reversible error for the trial court to overrule the objection, and he shows neither deficient performance nor actual prejudice.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

I.    Failure to Cross Examine a Witness Properly

Petitioner argues that trial counsel failed to cross examine properly a police officer who testified during punishment that a handbag was found in petitioner's possession at his arrest. The record shows that, during the punishment phase of trial, evidence was presented that the handbag was stolen property found in Boyd's apartment with petitioner at the time of his arrest, and that the handbag belonged to a witness who testified during punishment that "a black male" had robbed her of the handbag at gunpoint. She was unable to identify her assailant.

The record shows that trial counsel elicited testimony from the officer on cross examination that he had no idea how the handbag ended up in Boyd's apartment, and that he had no indication that petitioner had stolen it. Petitioner nevertheless complains that counsel should have asked the police officer whether petitioner's fingerprints were found on the handbag, and point out that only Boyd's name was on the apartment lease. Petitioner presents no probative summary judgment evidence that the proposed cross examination

would have elicited material evidence favorable to the defense. His conclusory allegations of what might have been shown do not constitute probative summary judgment evidence, and are insufficient to preclude respondent's entitlement to summary judgment in this issue. Further, petitioner fails to show that, but for counsel's failure to pursue these additional questions, there is a reasonable probability that he would have received a lesser sentence. Petitioner establishes neither deficient performance nor actual prejudice.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

J.  Admitting that Petitioner Used Drugs

Petitioner complains that trial counsel admitted to the jury during closing argument on guilt-innocence that petitioner committed the offenses of possession of cocaine, unauthorized use of a motor vehicle, and evading arrest with a motor vehicle. Petitioner argues that he never agreed to counsel's trial strategy of focusing on obtaining an acquittal only as to the primary offense, aggravated robbery.

The record shows that, during closing argument in the guilt-innocence phase of trial, trial counsel conceded that the high-speed chase video showed petitioner behind the wheel of a vehicle that he had no permission to drive, and that petitioner and Boyd had smoked crack cocaine immediately prior to petitioner's arrest. Trial counsel then presented extensive

29

argument to the jury that someone other than petitioner had robbed the complainant of his vehicle at gunpoint, and that the State had failed to prove it was petitioner who committed the aggravated robbery. This jury argument was consistent with the trial strategy petitioner and trial counsel had agreed upon prior to trial, as testified by trial counsel on state collateral review:

> I discussed with Mr. Wyatt at length the facts of the case and what the State was required to prove under his four indictments. I informed him of what was in the police reports and other discovery I obtained from the State, including a police dashboard camera video of a high-speed chase. Our basic strategy was to try to get Mr. Wyatt convicted of the lesser cases, since they carried a much lower range of punishment. Mr. Wyatt was in agreement with this and in fact may have suggested it to me.

*Ex parte Wyatt*, p. 121.

In denying state habeas relief on these issues, the state trial court made the following findings of fact:

> 11. It is alleged that the applicant robbed the complainant in the primary case at gun point, took his personal belonging[s] and his vehicle. The applicant later led the police on a high speed chase in the complainant's car, then abandoned the car and fled on foot to his girlfriend's apartment, where together they smoked the applicant's crack cocaine rocks to get rid of the drugs.

> 12. [Trial counsel] discussed the cases with the applicant at length. They discussed the facts of the cases, what was required for the State to prove the four (4) cases, and general strategies.

> 13. [Trial counsel] informed the applicant of the content of the police report, the allegations, and other documents and evidence in the State's files, including a video from the high-speed chase showing the applicant operating the complainant's car.

14.    The basic strategy of the cases was to attempt to secure only convictions in the lesser cases, because of the lower punishment ranges.

15.    The applicant agreed with this strategy. [Trial counsel] believes that the applicant may have suggested this strategy.

*   *   *   *

49.    [Trial counsel's] representation of the applicant was not deficient as the applicant fails to demonstrate that [trial counsel's] conduct fell below an objective reasonableness, and that there was a substantial likelihood that he would have been found not guilty, or that he would have received a lesser sentence in the primary case, but for [counsel's] conduct.

50.    [Trial counsel's] representation of the applicant was effective.

51.    The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of counsel at trial.

*Ex parte Wyatt*, pp. 145–46, 150–51. The trial court also concluded that trial counsel's representation was effective and that petitioner had been afforded reasonably effective assistance of counsel. *Id.*, p. 151. The trial court further concluded that, "Counsel's strategic decisions were made after a thorough investigation and had a plausible basis, and thus are virtually unchallengeable." *Id.*, p. 153. The Texas Court of Criminal Appeals relied on these findings and conclusions in denying habeas relief. *Id.*, at cover.

Even assuming counsel's actions during closing argument could be seen as deficient, petitioner does not show that, but for counsel's actions, there is a reasonable probability that the result of the trial would have been different. The record evinces overwhelming evidence

of petitioner's guilt as to the charges for unauthorized use of a motor vehicle, evading arrest with a motor vehicle, and possession of a controlled substance. Under the circumstances, it was reasonable trial strategy for trial counsel to focus on the aggravated robbery charge. Petitioner's conclusory assertions that he never agreed to the strategy are unsupported in the record, and petitioner establishes neither deficient performance nor actual prejudice.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

K.    Failure to Recall a Witness

Petitioner complains that trial counsel failed to recall Boyd during the punishment phase of trial to explain how the police found the handbag in her apartment.

In rejecting petitioner's claims of ineffective assistance of trial counsel, the state trial court made the following relevant findings:

49.    [Trial counsel's] representation of the applicant was not deficient as the applicant fails to demonstrate that [trial counsel's] conduct fell below an objective reasonableness, and that there was a substantial likelihood that he would have been found not guilty, or that he would have received a lesser sentence in the primary case, but for [counsel's] conduct.

50.    [Trial counsel's] representation of the applicant was effective.

32

51. The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of counsel at trial.

*Ex parte Wyatt*, pp. 150–51. The trial court also concluded that trial counsel's representation was effective and that petitioner had been afforded reasonably effective assistance of counsel. *Id.*, p. 151. The trial court further concluded that, "Counsel's strategic decisions were made after a thorough investigation and had a plausible basis, and thus are virtually unchallengeable." *Id.*, p. 153. The Texas Court of Criminal Appeals relied on these findings and conclusions in denying habeas relief. *Id.*, at cover.

Petitioner does not direct the Court to any probative evidence in the record demonstrating what Boyd's testimony would have been had she been recalled, and does not show that Boyd would have presented material testimony in favor of the defense as to why the handbag was in her apartment. Petitioner further fails to establish that counsel exercised reasonable trial strategy in not recalling Boyd, especially in light of petitioner's failure to show the content of Boyd's anticipated testimony. Petitioner does not negate the possibility that Boyd's testimony, had she been recalled, would have been damaging to the defense. In short, petitioner conclusory allegations, unsupported in the record, establish neither deficient performance nor actual prejudice under *Strickland*.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable

application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

L.    Failure to Impeach Witness

Petitioner asserts that trial counsel failed to impeach Boyd with evidence of her prior convictions, and for failing to discover whether Boyd "cut a deal" with the State in exchange for her testimony.

The record shows that, during its examination of Boyd as a State's witness, the State elicited testimony that she had prior convictions for shoplifting and a "hot check." R.R. Vol. 3, p. 101. Petitioner does not direct this Court to any evidence in the record showing that Boyd had any other convictions, or show how trial counsel was ineffective in not emphasizing Boyd's two convictions on cross examination. Moreover, petitioner fails to establish that Boyd and the State had entered into an agreement in exchange for her testimony, such that trial counsel was ineffective in not impeaching her with the agreement. In absence of proof that an agreement existed, petitioner cannot demonstrate deficient performance or actual prejudice under *Strickland*.

Likewise, petitioner fails to rebut the presumption that trial counsel's actions were reasonable trial strategy based on his knowledge that no agreement existed and that Boyd had no additional convictions. Petitioner against fails to show deficient performance or actual prejudice.

34

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

M.  Failure to Request a Limiting Instruction

Petitioner next argues that trial counsel should have requested a limiting instruction after the trial court sustained his objection to the State's "community expectations" argument. Petitioner asserts that this "deficient conduct by counsel left a false impression in the minds of the jury" that harmed the defense.

Plaintiff does not identify or otherwise describe the alleged false impression, or show how the defense was harmed by lack of a limiting instruction. Petitioner's conclusory allegations are unsupported in the record and afford him no basis for federal habeas relief. Even assuming counsel were deficient in not requesting a limiting instruction, petitioner fails to establish that, but for counsel's failure to request the limiting instruction, there is a reasonable probability that the result of the trial would have been different. Petitioner demonstrates neither deficient performance nor prejudice under *Strickland*.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

N.    Failure to Call Witnesses

Petitioner claims that trial counsel was ineffective for failing to call witnesses at the guilt-innocence and punishment phases of trial. In particular, he claims that trial counsel should have called Boyd to testify regarding a stolen handbag found in her apartment during petitioner's arrest. Petitioner identifies no other specific omitted witnesses.

To demonstrate an ineffective assistance claim based on an uncalled witness, a petitioner must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Petitioner's conclusory allegations of what Boyd may have said are speculative, unsupported in the record, and provide no basis for habeas relief. Petitioner's *Strickland* claim is without merit.

Petitioner fares no better with his generalized claim of uncalled witnesses, as he fails to name them, demonstrate their availability for trial and the content of their proposed testimony, or show that their testimony would have been material and favorable to a particular defense. *Day.* In response to petitioner's claim on state collateral review, trial counsel testified in his affidavit as follows:

> Regarding witnesses, Mr. Wyatt never furnished me with any useful information. For instance, he told me he got the car from a drug dealer named 'Red,' but gave me no other information. The girlfriend in the apartment to which Applicant fled gave a statement to police that incriminated Applicant, and she turned over to police items stolen in robberies and a replica handgun.

36

She testified at the instance of the State during the trial. *As for Mr. Wyatt's assertion that there were alibi witnesses, he never informed me of the existence or identities of any such witnesses.*

*Ex parte Wyatt*, p. 122 (emphasis added).

In denying petitioner's claims of uncalled witnesses, the state trial court found trial counsel's affidavit credible, and made the following relevant findings of fact:

35. The applicant never provided [trial counsel] with useful information on possible witnesses for the defense. The applicant indicated to [trial counsel] at one point that he obtained the car from a drug dealer known as 'Red,' but did not give [trial counsel] any other information to locate this individual. The applicant's girlfriend testified for the State. The applicant did not provide [trial counsel] with any information on any alibi witnesses for the extraneous offense.

\* \* \* \*

44. The applicant did not provide any useful information to [trial counsel] for [counsel] to subpoena any witnesses to testify at trial.

*Ex parte Wyatt*, pp. 148–149, 150. The trial court also made the following relevant conclusions of law:

69. When challenging an attorney's failure to call a particular witness, an 'applicant must show that [the witness] had been available to testify and that his testimony would have been of some benefit to the defense.

70. The applicant fails to show that counsel failed to interview witnesses, and fails to meet his burden of showing that, not only were these un-named individuals available to testify, but how their testimony would have benefited the applicant.

71. The applicant fails to prove by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness, [and] thus fails the first prong of *Strickland*.

72. Even assuming, *arguendo*, that counsel's representation was so deficient that it fell below an objective standard of reasonableness, the applicant still fails to prove that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.' Such probability or likelihood must have been substantial, just not conceivable.

73. The applicant does not demonstrate a substantial likelihood of a different result, [and] thus fails to meet the second prong of *Strickland*.

74. The applicant fails to prove that, but for counsel's conduct, the applicant would have been found not guilty, or would have received a lesser sentence.

*Id.*, pp. 154–55 (citations omitted). The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Petitioner's conclusory allegations of unidentified omitted witnesses are unsupported in the record and provide no basis for federal habeas relief under *Strickland*. Petitioner establishes neither deficient performance nor actual prejudice, and fails to demonstrate ineffective assistance of trial counsel.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

O.    Appellate Counsel

Petitioner contends that appellate counsel was ineffective in failing to file a motion for new trial. Specifically, he argues that appellate counsel should have filed a motion for new trial before raising ineffective assistance of trial counsel claims on appeal.

The right to effective assistance of counsel applies to a motion for new trial during the post-trial, pre-appeal period in Texas, and is measured under the *Strickland* standards. *McAfee v. Thaler*, 630 F.3d 383 (5th Cir. 2011). The Texas Court of Criminal Appeals recognizes that direct appeal is usually an inadequate vehicle for raising ineffective assistance of trial counsel claims, as the record is generally undeveloped. *Goodspeed v. State*, 2005 WL 766996, at *2 (Tex. Crim. App. 2005). An application for state habeas relief is the more appropriate vehicle to raise such claims. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Petitioner is unable to establish actual prejudice for any failure of appellate counsel to file a motion for new trial regarding ineffectiveness of trial counsel. Any ineffective assistance of trial counsel claims he might have raised in a motion for new trial could be raised in his state habeas proceeding. Moreover, the state court and this Court have rejected the merits of petitioner's claims that trial counsel was ineffective.

Petitioner fails to meet his burden of proof under *Strickland*, and he is not entitled to habeas relief on this claim. Respondent is entitled to summary judgment dismissal of petitioner's claims of ineffective assistance of appellate counsel.

39

# VI. PROSECUTORIAL MISCONDUCT

Petitioner argues that the State committed prosecutorial misconduct by misleading the jury, failing to inform the jury about a purse, and commenting on petitioner's post-arrest silence and failure to testify at trial.

Respondent correctly argues that these claims are procedurally defaulted and barred from consideration by the Court at this juncture. Petitioner did not raise these claims on direct appeal. Although he subsequently raised them on state collateral review, the state trial court found that they were record claims that could not be raised on state habeas review:

52. The applicant's numerous complaints regarding prosecutorial misconduct are record claims.

53. The applicant did not prevail on these record claims on direct appeal and cannot further litigate these issues in a habeas proceeding.

54. The applicant already challenged the sufficiency of evidence on the issue of [a] deadly weapon, and the Fourteenth Court of Appeals overruled the issue.

*Ex parte Wyatt*, p. 151 (ellipses omitted). The state trial court also made the following relevant conclusions of law:

76. It is well settled that habeas proceedings should not be used to litigate issues that should have been raised on direct appeal.

77. The purpose of habeas corpus is to determine the lawfulness of confinement and not to serve as the substitute for an appeal.

78. Generally, factual and evidentiary challenges are 'record claims' and should be litigated on direct appeal. The applicant's allegations of prosecutorial misconduct are considered 'record claims' and should

have been brought up on appeal. The applicant did not prevail on these issues in his direct appeal, and is now procedurally barred from further litigation of them.

*Id.*, pp. 155–56 (citations and ellipses omitted). The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

The Texas Court of Criminal Appeals has repeatedly held that claims that could have been raised on direct appeal may not be raised in a state habeas petition. *See Ex parte Gardner*, 959 S.W.2d 189, 199–200 (Tex. Crim. App. 1998). The Fifth Circuit Court of Appeals has also recognized and applied this state procedural bar. *See Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004). Because the state court based its denial of relief on a procedural default, federal review of a habeas claim by this Court is procedurally barred, unless petitioner "demonstrates cause for the default and actual prejudice attributable to the default or that the federal court's failure to consider the claim will result in a miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To prevail on the question of a "miscarriage of justice," petitioner must establish that he is actually innocent of his crime. *See Sawyer v. Whitney*, 505 U.S. 333, 339–40 (1992).

Petitioner fails to demonstrate good cause for the procedural default or actual prejudice attributable to the default, or any miscarriage of justice that will result if his claim is not heard by this Court. Moreover, petitioner fails to show that the state court's rejection of his claims was objectively unreasonable or contrary to clearly established federal law as established by the United States Supreme Court, nor does he establish that the state court's

adjudication of his claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner's claims of prosecutorial misconduct are procedurally defaulted and barred, and respondent is entitled to summary judgment dismissal of the claims.

## VII.  TRIAL COURT ERROR

Petitioner asserts that the trial court erred by overruling objections to the jury charge, allowing extraneous offense evidence, issuing a "blue warrant," and making an affirmative deadly weapon finding.

Respondent correctly argues that these claims are procedurally defaulted and barred from consideration by the Court at this juncture.  Petitioner did not raise these claims on direct appeal.  Although he subsequently raised them on state collateral review, the state trial court found that they were record claims that could not be raised on state habeas review:

> 52.    The applicant's numerous complaints regarding trial court err[or] are record claims.
>
> 53.    The applicant did not prevail on these record claims on direct appeal and cannot further litigate these issues in a habeas proceeding.
>
> 54.    The applicant already challenged the sufficiency of evidence on the issue of [a] deadly weapon, and the Fourteenth Court of Appeals overruled the issue.

*Ex parte Wyatt*, p. 151 (ellipses omitted).  The state trial court also made the following relevant conclusions of law:

76. It is well settled that habeas proceedings should not be used to litigate issues that should have been raised on direct appeal.

77. The purpose of habeas corpus is to determine the lawfulness of confinement and not to serve as the substitute for an appeal.

78. Generally, factual and evidentiary challenges are 'record claims' and should be litigated on direct appeal. The applicant's allegations of trial court error are considered 'record claims' and should have been brought up on appeal. The applicant did not prevail on these issues in his direct appeal, and is now procedurally barred from further litigation of them.

*Id.*, pp. 155–56 (citations and ellipses omitted). The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

The Texas Court of Criminal Appeals has repeatedly held that claims that could have been raised on direct appeal may not be raised in a state habeas petition. *See Ex parte Gardner*, 959 S.W.2d at 199–200. The Fifth Circuit Court of Appeals has also recognized and applied this state procedural bar. *See Busby*, 359 F.3d at 719. Because the state court based its denial of relief on a procedural default, federal review of a habeas claim by this Court is procedurally barred, unless petitioner "demonstrates cause for the default and actual prejudice attributable to the default or that the federal court's failure to consider the claim will result in a miscarriage of justice." *See Coleman*, 501 U.S. at 750. To prevail on the question of a "miscarriage of justice," petitioner must establish that he is actually innocent of his crime. *See Sawyer*, 505 U.S. at 339–40.

Petitioner fails to demonstrate good cause for the procedural default or actual prejudice attributable to the default, or any miscarriage of justice that will result if his claim is not heard by this Court. Moreover, petitioner fails to show that the state court's rejection of his claims was objectively unreasonable or contrary to clearly established federal law as established by the United States Supreme Court, nor does he establish that the state court's adjudication of his claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

To any extent petitioner's claim of trial court error regarding the affirmative deadly weapon finding may be construed as a challenge to the sufficiency of the evidence, the claim lacks merit. The intermediate state appellate court found the evidence sufficient to support the trial court's affirmative finding of a deadly weapon, and this finding was restated by the trial court on state habeas review. This Court's review of the state court record finds sufficient evidence to support the finding under *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). Petitioner is not entitled to habeas relief on this issue.

Petitioner's claims of trial court error are procedurally defaulted and barred, and respondent is entitled to summary judgment dismissal of the claims.

## VIII.  MATERIAL VARIANCE

Petitioner complains that there was a material variance between the indictment and the proof presented at trial. Specifically, he asserts that the indictment alleged he used or

exhibited a firearm in the course of committing robbery, while the evidence at trial showed that he used a "BB gun."

The Court notes that petitioner is incorrect in stating that the evidence showed his use of a BB gun during the robbery. To the contrary, no gun or other weapon was recovered from the scene of the crime, and no witness testified that a BB gun was used. Although a BB gun was found in Boyd's apartment at the time of petitioner's arrest, Boyd stated that it belonged to her, and there was no evidence that it was the weapon used during the offense. The complainant, a former Marine, testified that the gun petitioner pointed at him during the offense appeared similar to a Glock-type gun. Consequently, petitioner's claim of a material variance is factually unsupported in the record.

Moreover, the Court agrees with respondent's argument that petitioner's claim should be construed as a challenge to the sufficiency of the evidence supporting the aggravated robbery conviction. In determining whether there was sufficient evidence to support a conviction, a court must decide whether, when viewing all of the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In conducting this review, a federal habeas court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict. *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

The intermediate state appellate court rejected petitioner's claim of insufficiency of the evidence regarding the aggravated robbery conviction, and held as follows:

> In his first issue, appellant challenges the legal sufficiency of the evidence supporting his conviction for aggravated robbery, alleging the State failed to present any evidence that the weapon used during the robbery was a firearm. A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another, or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. A robbery is aggravated if the person uses or exhibits a deadly weapon in the course of committing the robbery.
>
> The State alleged in the indictment, in relevant part, that appellant:
>
>> unlawfully, while in the course of committing theft of property owned by CHARLES BOCK and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place CHARLES BOCK in fear of imminent bodily injury and death, and the Defendant did then and there use and exhibit a deadly weapon, to wit: A FIREARM.
>
> A deadly weapon is defined as 'a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury.' Therefore, a firearm is a deadly weapon *per se*. A firearm is 'any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use.' A 'gun' is a much broader term than 'firearm' and may include such non-lethal instruments as BB guns, blow guns, pop guns, and grease guns.
>
> Appellant complains that Bock never described the type of gun used in the robbery, and the State never presented any gun as demonstrative of the type appellant used. Instead, appellant asserts that the only evidence describing the possible gun used was the BB gun found in [his girlfriend's] apartment. We disagree.

Bock testified that appellant pointed a gun at him. Bock, who is a former Marine and is 'familiar with weapons,' testified that the gun 'appeared to be a weapon to me.' Bock described the gun as similar to a 'Glock-type gun.' Bock further stated that '[a]s far as the actual recall of giving a registered name to it, I just looked at this and saw that it was a weapon.' Bock could not say of his own knowledge whether it was a real gun—he did not see the action work to determine if it would work like a real gun. Bock testified that when appellant told Bock to lie in front of the car, 'that's when I was really unsure of what was fixing to happen.' His testimony showed that as far as Bock knew, he thought appellant would shoot him—'[i]t was questionable' whether or not he would live.

Deputy Robinson recovered a BB gun from [the girlfriend's] apartment. Deputy Robinson did not have any indication or personal knowledge that the BB gun was involved in the aggravated robbery; it was merely a piece of evidence recovered from the apartment. [Petitioner's girlfriend] testified that the BB gun belonged to her.

As outlined above, Bock testified that appellant pointed a 'gun' at him and described the gun as similar to a 'Glock-type gun.' 'Testimony using any of the terms 'gun,' 'pistol' or 'revolver' is sufficient to authorize the jury to find that a deadly weapon was used.'

Moreover, when appellant pointed the gun at Bock and ordered him to lie on the ground, Bock feared that appellant was going to kill him. Where the accused threatens the victim with a gun, the act itself suggests that the gun is a firearm rather than merely a gun of the non-lethal variety.

The fact finder is free to draw reasonable inferences and make reasonable deductions from the evidence as presented within the context of the crime. Absent any specific indication to the contrary at trial, the jury may draw the reasonable inference or make the reasonable deduction the gun used in the commission of the crime was a firearm. Although Deputy Robinson recovered a BB gun from [the girlfriend's] apartment, he did not have any indication that it was involved in the aggravated robbery. *Here, without regard to the recovery of a BB gun, the jury was permitted to draw the reasonable inference or make the reasonable deduction that the gun appellant used during the robbery was a firearm.*

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have found beyond a reasonable doubt that the gun used in the robbery was a firearm.

*Wyatt v. State*, 2011 WL 2120118, *3–5 (emphasis added; citations omitted).

This Court's review of the state court record finds sufficient evidence to uphold the state court's findings and determination, and to support petitioner's conviction for aggravated robbery under the *Jackson* standard. Petitioner is not entitled to habeas relief on this issue.

## IX. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 12) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

Signed at Houston, Texas, on this the 30th day of October, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE